UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

ALGER BIBLE BAPTIST
CHURCH,

        Plaintiff,                              Case No. 13-13637
                                                       Honorable Thomas L. Ludington

v.

TOWNSHIP OF MOFFATT,

        Defendant.
_____/

**OPINION AND ORDER GRANTING IN PART MOTION TO DISMISS, DENYING MOTION FOR INJUNCTIVE RELIEF, DENYING AS MOOT MOTION TO STRIKE AFFIRMATIVE DEFENSES AND DISMISSING COMPLAINT**

Moffatt Township (Moffatt) enacted a zoning ordinance that precludes churches or other religious buildings in any area zoned as "Highway Commercial." *See* Zoning Ordinance § 5.10, *attached as* Pl.'s Compl. Ex. 8, ECF No. 1. The purpose of Moffatt's highway commercial district "is to encourage the development of general retail, service, warehousing and distribution business, and light industry in conjunction with the M-76/M-33/I-75 interchange area." *Id*. Because churches and other religious buildings do not align with this objective—and do not produce tax revenue for the Township—those institutions are not included in Moffatt's highway commercial district.[1]

Despite Moffatt's Zoning Ordinance, Alger Bible Baptist Church (ABBC) wants to purchase land in the highway commercial district and build a church in order to expand its congregation. But Moffatt denied ABBC's request to rezone the location. Pl.'s Compl. ¶ 69. As a result, ABBC filed this lawsuit, alleging that Moffatt "continues to enforce a Zoning Ordinance

---

[1] Although, as will be explained, churches and other religious buildings are permissible in four out of Moffatt's six district types.

that treats religious organizations on less than equal terms compared to similar non-religious assemblies[,]" *id*. ¶ 72, in violation of the Religious Land Use and Institutionalized Persons Act (RLUIPA). ABBC also alleges claims under the First and Fourteenth Amendments, as well as the Michigan Constitution.

The same day it filed its complaint, ABBC filed a motion for injunctive relief to prevent Moffatt from enforcing the Zoning Ordinance. Moffatt then filed a motion to dismiss, arguing that ABBC has not stated a claim upon which relief can be granted. Moffatt's motion to dismiss will be granted, and ABBC's motion for injunctive relief will be denied.

# I

## A

ABBC has served the Alger and Moffatt Township communities for almost thirty years. It welcomes between twenty and thirty members each Sunday—with services at 11 a.m. and 1 p.m.—and offers a family bible hour on Sundays and a prayer and teaching service on Wednesdays. *Id*. ¶ 8. To support these activities, and to give worshipers a place to congregate, ABBC rents a small building in Alger, Michigan. But the facility is not up to par. For example, "the roof of the building is in such disrepair that the Church must use buckets spread throughout the building to catch rainwater that falls through the dilapidated roof." *Id*. ¶ 13. Due to building's condition, ABBC "has a shortage of space within which to hold its services," *id*. ¶ 14, and "attracting new parishioners is made even more difficult because the Church is currently located on a small lot, without room to expand, in an isolated location that is not near the main business corridor[,]" *id*. ¶ 15. Because ABBC does not own the property outright, it is unable to make the repairs it deems necessary.

Around 2007, ABBC hired Anthony Garrisi (Garrisi) to act as a part-time pastor. *Id*. ¶ 11. Sometime in 2010, Garrisi assumed the role of ABBC's full-time pastor. *Id*. He believes that ABBC's location "inhibit[s] the Church's ability to grow beyond its current membership." Garrisi Decl. ¶ 8, *attached as* Pl.'s Compl. Ex. 2. As a result, ABBC and Garrisi "sought to acquire property that is larger and in a more prominent location—ideally closer to I-75—so that the Church is more easily accessible by both its current congregation and prospective new members." *Id*. ¶ 13.

In the beginning of 2012, Garrisi "became aware of a property for sale in Moffatt Township." *Id*. ¶ 15. The land is located at 2030 M-76 in Alger, Michigan (the Property). Garrisi concluded that the Property—an old ice cream shop surrounded by 5.5 acres—was the perfect place to relocate ABBC. Indeed, Garrisi "strongly felt that God had called [him] to relocate the Church and congregation to the new location." *Id*. ¶ 15. So after "praying about the matter with Church elders," Garrisi "entered into a land contract for the Property on behalf of the church and made a down payment of $1,000 as a good faith deposit toward the purchase price of $45,000." *Id*. ¶ 19. Unfortunately, this was all before Garrisi, or anyone else in the congregation for that matter, investigated Moffatt's Zoning Ordinance.

**B**

Moffatt's Zoning Ordinance provides for six different types of zoned districts: (1) forested; (2) agricultural/rural residential; (3) residential; (4) village mixed use; (5) general commercial; and (6) highway commercial. *See* Zoning Ordinance ii. The Zoning Ordinance lays out the permitted "primary uses" and the permitted "conditional uses" for each of these district types.

Churches are not included as a primary use for any of the six districts. However, churches and other religious buildings are permissible "conditional uses"—upon acquiring a "Special Use Permit"—in forested districts, *id.* at 5-2, agricultural/rural residential districts, *id.* at 5-6, residential districts, *id.* at 5-9, and village mixed districts, *id.* at 5-11. Churches are not permissible, even with a Special Use Permit, in Moffat's two commercial districts.

### C

After entering into the purchase agreement for the Property, Garrisi attended one of Moffatt's Township Planning Commission meetings "on or about July 11, 2012." Garrisi Decl. ¶ 20. It was there that Garrisi learned—"for the first time"—that the Property "was zoned in the Highway Commercial District, which [does] not permit churches or religious uses." *Id.* ¶ 21. On July 16, 2012, Garrisi attended a Township Board of Supervisors meeting. *Id.* ¶ 23. At that meeting, Township Clerk Kim Spencer informed him that "churches [are] not allowed under any circumstances in the Highway Commercial District." *Id.* ¶ 24. Ms. Spencer recommended that Garrisi and ABBC "wait to buy the local Catholic Church when it went out of business." *Id.*

Garrisi and ABBC did not like that idea, nor did they like the fact that the Zoning Ordinance precludes religious buildings on the Property. So they took action. On August 14, 2012, ABBC's counsel informed Moffatt that "the Zoning Ordinance was in violation of [RLUIPA]." *Id.* ¶ 28. No response was received. Then, in January 2013, Garrisi "submitted an application for a zoning variance" to allow for a church on the Property. Moffatt responded, via counsel, and indicated that ABBC's zoning application was "incomplete," and that in any event, "churches are not allowed as a principal use or special use in Highway Commercial zones." *Id.* ¶¶ 32, 33.

In April 2013, ABBC revised the previous purchase agreement with the owner of the Property and entered into an option agreement to purchase the Property for $45,000, with the $1,000 payment to serve as consideration for the option (which is to last for two years). *Id.* ¶ 34. ABBC then submitted a second application to rezone the Property to a forested district, as well as an application for a Special Land Use permit to allow a religious building if the rezoning application was successful. *Id.* ¶ 35.

Moffatt's Planning Commission held a public meeting on July 11, 2013, to discuss ABBC's application. *Id.* ¶ 48. The Planning Commission "voted unanimously to deny the rezoning request, which rendered moot the request for the Special Land Use permit." *Id.* ¶ 52. On July 15, 2103, Moffatt's Township Board held a public meeting to consider the Planning Commission's unanimous recommendation that ABBC's application for rezoning be denied, as well as its request for a Special Land Use permit. *Id.* ¶ 53. The Township Board "voted unanimously to deny the request for rezoning, thereby also denying the application for the Special Land Use permit." *Id.* ¶ 55. ABBC subsequently filed this lawsuit and a motion for a preliminary injunction. Moffatt's motion to dismiss followed soon thereafter.

**II**

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement showing that the pleader is entitled to relief." To survive a motion to dismiss pursuant to Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim for relief that is plausible on its face. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) (internal quotation marks omitted)). A claim is plausible when the plaintiff pleads factual content sufficient to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Iqbal*, 556 U.S. at 678. Generally, however, a

Rule 12(b)(6) motion to dismiss should be granted "when the statement of the claim affirmatively shows that the plaintiff can prove *no* set of facts that would entitle him to relief." *New Eng. Health Care Emps. Pension Fund v. Ernst & Young, LLP*, 336 F.3d 495, 501 (6th Cir. 2003) (emphasis in original) (quoting *Ott v. Midland-Ross Corp.*, 523 F.2d 1367, 1369 (6th Cir. 1975)).

As to ABBC's motion for injunctive relief, four factors govern the inquiry: (1) ABBC's likelihood of success on the merits; (2) whether it would suffer irreparable injury without the injunction; (3) whether an injunction would cause substantial harm to others; and (4) whether issuance of the injunction would serve the public interest. *Eden Foods, Inc. v. Sebelius*, 733 F.3d 626, 631 (6th Cir. 2013) (citing *Ne. Ohio Coal. For Homeless v. Husted*, 696 F.3d 580, 590–91 (6th Cir. 2012)). "Although no one factor is controlling, a finding that there is simply no likelihood of success on the merits is usually fatal." *Eden Foods*, 733 F.3d at 631 (quoting *Gonzales v. Nat'l Bd. of Med. Exam'rs*, 225 F.3d 620, 625 (6th Cir. 2000)).

### III

Because a finding that ABBC's claims lack a likelihood of success would generally be "fatal" to its motion for injunctive relief, Moffatt's motion to dismiss will be addressed first. Only if ABBC's claims survive the application of Federal Rule of Civil Procedure 12(b)(6) will its motion for injunctive relief be addressed on the merits.

### A

Moffatt argues that ABBC's complaint "fails to state a claim upon which relief may be granted . . . ." Def.'s Mot. 4, ECF No. 10. Upon review, Moffatt is correct; ABBC's complaint will be dismissed.

ABBC's complaint sets forth five counts against Moffatt, the first three of which are predicated upon 42 U.S.C. § 1983: (1) violation of the right to free exercise of religion under the First Amendment; (2) violation of the rights to freedom of speech and assembly under the First Amendment; (3) violation of the right to equal protection under the Fourteenth Amendment; (4) violation of RLUIPA; and (5) violations of ABBC's rights under the Michigan Constitution. *See* Pl.'s Compl. ¶¶ 73–105. Each claim will be addressed in turn.

**1**

ABBC's first claim is that Moffatt's Zoning Ordinance violates its right to freely exercise its religion. The First Amendment's Free Exercise Clause, made applicable to state and local governments by the Fourteenth Amendment, provides that "Congress shall make no law respecting an establishment of religion, or prohibiting the free exercise thereof." U.S. Const. amend. I. Notably, "[t]he First Amendment does not, however, prevent the government from regulating behavior associated with religious beliefs." *Dilaura v. Ann Arbor Charter Tp.*, 30 F. App'x 501, 508 (6th Cir. 2002) (citation omitted). Indeed, as the Supreme Court has established, "[the] right of free exercise does not relieve an individual of the obligation to comply with a valid and neutral law of general applicability on the ground that the law proscribes (or prescribes) conduct that his religion proscribes (or prescribes)." *Dep't of Human Res. of Oregon v. Smith*, 494 U.S. 872, 879 (1990).

Accordingly, the question here is whether Moffatt's Zoning Ordinance is a "neutral law of general applicability"—for if it is, it does not violate ABBC's right to freely exercise its religion. *See Mount Elliott Cemetery Ass'n v. City of Troy*, 171 F.3d 398, 405 (6th Cir. 1999) ("the City of Troy's ordinances . . . are neutral laws of general applicability. As a result, we find that judgment was properly entered in favor of the City with respect to the free exercise claim.").

"A law is neutral so long as its object is something other than the infringement or restriction of religious practices." *Grace United Methodist Church v. City of Cheyenne*, 451 F.3d 643, 649–50 (10th Cir. 2006) (citing *Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 533 (1993)). The starting point for assessing whether the Zoning Ordinance is a neutral law "must begin with its text[.]" *Lukumi Babalu*, 508 U.S. at 533.

Here, Moffatt's Zoning Ordinance is neutral on its face. Although churches and other religious buildings are not permissible by right in any of Moffatt's six zoned districts, the same is true for many secular institutions: cemeteries, landfills, day care facilities, lodges and clubs, stables, kennels, bed and breakfasts, and natural resource extraction operations. *See* Zoning Ordinance 5-2—5-22. And, just like churches and other religious buildings, none of these structures are permissible, even conditionally, in Moffatt's two commercial districts. *Id*. at 5-20, 5-22. Even schools—both private and public—are excluded from Moffatt's commercial districts.

ABBC has not addressed, let alone overcome, these facts to demonstrate that the object of the Zoning Ordinance is infringement or restriction of religious practices, as opposed to its stated goal of promoting commercial growth. *See Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 277 (3d Cir. 2007) (finding zoning ordinance to be a neutral law because there was no evidence that "the ordinance was passed due to religious animus . . . was discriminatorily enforced against religious institutions . . . [or] devalued religious reasons by judging them to be of lesser import than nonreligious reasons.") (internal citations omitted)); *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1234 (11th Cir. 2004) ("Zoning laws inherently distinguish between uses and necessarily involve selection and categorization, often

- 8 -

restricting religious assemblies to designated districts and frequently requiring that religious assemblies complete a conditional use application procedure.").

Although facially neutral, the Zoning Ordinance may still offend the Free Exercise Clause if it "targets religious conduct for distinctive treatment . . . ." *Lukumi Babalu*, 508 U.S. at 534. However, Moffatt's Zoning Ordinance does not represent "masked" hostility toward religion, *id*., and ABBC's claim that it has "provide[d] concrete examples of numerous instances in which Township officials and the Zoning Ordinance infringed upon its free exercise rights" is unfounded. For even if the Township Supervisor stated "that he did not want [ABBC] to operate at the Property because it would not generate any tax revenue," this statement does not impermissibly target religion; instead, the statement aligns with the Zoning Ordinance's purpose: promoting tax payer's commercial retail services in conjunction with a major highway-interchange area. ABBC also claims that "other similar secular institutions are permitted as a matter of right" in some Moffatt districts, while churches and other religious buildings are not, but ABBC does not address the numerous secular structures—outlined above—that are similarly not permitted by right in any district. Further, established by the Eleventh Circuit in *Midrash*, 336 F.3d at 1234, "[z]oning laws . . . frequently requir[e] that religious assemblies complete a conditional use application procedure."

ABBC also emphasizes that religious structures are not permitted in highway commercial zones while "secular institutions like theatres and commercial recreation" are permitted. Of course, theatres and commercial recreation generate revenue, and thus fall directly in line with Moffatt's goal of "encourag[ing] the development of general retail" in the highway commercial district. ABBC does not advance a single, non-secular institution that does not produce some form of tax revenue for the Township but that is nevertheless permitted to operate in the highway

commercial district. It follows that ABBC has not pled sufficient facts to demonstrate that the Zoning Ordinance impermissibly "targets religious conduct for distinctive treatment." Indeed, "a church has no constitutional right to be free from reasonable zoning regulations nor does a church have a constitutional right to build its house of worship where it pleases." *Grace United Methodist*, 451 F.3d at 652 (citation omitted).

Finally, ABBC argues that the Township Zoning Administrator's statement that ABBC "shouldn't bother" submitting an application to rezone the Property is evidence of a constitutional violation. However, "[i]f the Free Exercise Clause is not violated by a municipality's enforcement of its laws of general applicability, it is certainly not violated when the municipality declines to grant an exemption from those laws to a religious institution." *St. Paul's Protestant Episcopal Church v. City of Oakwood*, No. C-3-88-230, 1998 WL 1657172, at *5 (S.D. Ohio Mar. 3, 1998). The fact that Moffatt Township's agents indicated that ABBC would not receive an exception is simply not evidence of a constitutional violation.

Moffatt's Zoning Ordinance is a facially-neutral law that is applied generally to all citizens; only structures that promote commercial retail and generate revenue are permissible in the highway commercial district. Thus, the Zoning Ordinance does not violate the Free Exercise Clause, and ABBC's claim is without merit. It will be dismissed with prejudice.

**2**

The First Amendment also prohibits government decision makers from "abridging the freedom of speech, . . . or the right of the people to peaceably assemble." U.S. Const. amend. I. In Count II of its complaint, ABBC alleges that Moffatt's Zoning Ordinance does just that.

But ABBC does not suggest that Moffatt has prevented it from speaking on matters of religion or expressing its religious faith to anyone, nor does ABBC suggest that the Zoning

Ordinance prohibits its members from assembling. It simply alleges that the Zoning Ordinance prevents it from practicing its religion in the precise location where it wants to. But, worthy of emphasis here, a church has no "constitutional right to build its house of worship where it pleases." *Grace United Methodist*, 451 F.3d at 652 (citation omitted). Accordingly, these claims will be dismissed with prejudice. *See Muslim Cmty. Ass'n of Ann Arbor and Vicinity v. Pittsfield Charter Tp.*, 947 F. Supp. 2d 752, 771 (E.D. Mich. 2013) (dismissing free speech and assembly claims, under almost identical facts, because zoning ordinance did not prevent religious order from speaking about or expressing its religion, or prohibit members from assembling).

**3**

ABBC's Equal Protection claim is similarly unsound. The Fourteenth Amendment's Equal Protection Clause commands that no State shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. This provision is "essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (citation omitted).

The standard of review applicable to an Equal Protection claim varies depending on the impact of the challenged conduct: "When a statute or ordinance uniquely impacts adversely a suspect class or invades a fundamental right, the rigorous strict scrutiny standard will apply, but when it does not the ordinance is tested under the rational relationship standard." *Mount Elliott Cemetery*, 171 F.3d at 406. Regardless of the standard of review, the plaintiff must demonstrate that it was treated differently than others who are similarly situated. *Id.* ("We find that the Association has failed to demonstrate a question of fact concerning whether its rezoning request was treated differently than similarly-situated requests and, therefore, we need not apply the rational basis test.").

ABBC has offered no evidence that similarly-situated, secular institutions have been permitted in Moffatt's highway commercial zone. In response to Moffatt's motion to dismiss, it claims that it has shown similarly-situated institutions:

> The facts and evidence as alleged in the Complaint show that the Township's Zoning Ordinance on its face totally excludes religious uses in the Highway Commercial District, and Defendant has admitted the same. This unequal treatment is improperly based on the religious nature and content of Plaintiff's assembly and speech, while similar secular speech and assembly uses are permitted as of right in the same zoning district where [sic].

Pl.'s Resp. 13. What are those similarly-situated secular institutions? ABBC does not answer this question in its response to Moffatt's motion to dismiss. ABBC's complaint similarly makes no mention of specific, secular institutions that are similarly situated but nevertheless allowed to operate in the highway commercial district. *See* Pl.'s Compl. ¶¶ 91–95. Thus, ABBC has not pled sufficient facts to raise the inference that "its rezoning request was treated differently than similarly-situated requests." *Mount Elliot Cemetery*, 171 F.3d at 406. However, this claim will not be dismissed with prejudice, but without. If it so chooses, ABBC may attempt to plead sufficient facts to raise the inference that it was treated less than equal to a similarly-situated party.

**4**

ABBC's RLUIPA claims will also be dismissed. In *Cutter v. Wilkinson*, 544 U.S. 709, 714–17 (2005), the Supreme Court described the history that prompted the enactment of RLUIPA: "RLUIPA is the latest of long-running congressional efforts to accord religious exercise heightened protection from government-imposed burdens, consistent with [Supreme Court] precedents." *Id.* at 714.

Relevant here, § 2 of RLUIPA contains two subsections that limit land-use regulations applicable to religious groups. The first subsection contains the Substantial Burden Clause,

which prohibits the imposition or implementation of a land-use regulation in a manner that imposes a "substantial burden" on the religious exercise of a person, assembly, or institution unless the government can show that the regulation furthers a "compelling governmental interest" by "the least restrictive means." 42 U.S.C. § 2000cc(a). The second subsection contains three provisions under the heading "Discrimination and exclusion." *Id.* § 2000cc(b). The Equal Terms Clause prohibits imposing or implementing a land use regulation so as to treat a religious assembly "on less than equal terms" than a nonreligious assembly. *Id.* § 2000cc(b)(1). The Nondiscrimination Clause prohibits imposing or implementing a land use regulation so as to discriminate against an assembly or institution on the basis of religion. *Id.* § 2000cc(b)(2). The third provision concerns "Exclusions and limits" and contains two subparts that prohibit: (A) "totally exclud[ing] religious assemblies from a jurisdiction"; and (B) imposing or implementing a land use regulation that "unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." *Id.* § 2000cc(b)(3).

ABBC alleges violations of all three clauses under the "Discrimination and exclusion" subsection: the Equal Terms Clause, the Nondiscrimination clause, and the Exclusions and Limits Clause. *See* Pl.'s Compl. ¶ 101. Curiously, Moffatt has moved for dismissal of ABBC's complaint, but essentially confines its argument to ABBC's claim under the Equal Terms Clause. *See* Def.'s Mot. 9–11. In its response, ABBC similarly makes no mention of the other two clauses under which it has alleged claims. *See* Pl.'s Resp. 14–16. Accordingly, the analysis begins with the Equal Terms Clause.

**a**

The statutory text of the Equal Terms Clause provides: "No government shall impose or implement a land use regulation in a manner that treats a religious assembly or institution on less

than equal terms with a nonreligious assembly or institution." *Id.* § 2000cc(b)(1). RLUIPA explicitly places the burden on ABBC to establish a prima facie case supporting this claim. 42 U.S.C. § 2000cc–2(b). For an "equal terms" violation, the prima facie case is comprised of four elements: "(1) the plaintiff must be a religious assembly or institution, (2) subject to a land use regulation, that (3) treats the religious assembly on less than equal terms, with (4) a nonreligious assembly or institution." *Primera Iglesia Bautista Hispana of Boca Raton, Inc. v. Broward Cnty.*, 450 F.3d 1295, 1307 (11th Cir. 2006). In this case, the parties agree (and the record is undisputed) that Alger is a religious assembly subject to a land use regulation; so the first two elements are readily satisfied. The dispute here thus concerns whether Alger met its initial burden to produce evidence supporting the last two elements of the claim: that the land use regulation treats the religious assembly on less than equal terms with a nonreligious assembly or institution.

RLUPIA does not define the meaning of "equal terms," and the Sixth Circuit has not filled the gap. Those courts that have defined the term are not in agreement as to its meaning. *See Pittsfield Charter Tp.*, 947 F. Supp. 2d at 766 (comparing cases). As this Court explained in *Pittsfield Charter Tp.*, the disagreement among the Circuits "centers on how broadly to construe the phrase 'nonreligious assembly or institution,'" as well as what constitutes a similarly situated comparator. *Id.* For example, "the Eleventh Circuit requires a plaintiff to demonstrate unequal treatment as compared to any secular institution or assembly." *Id.* (citing *Midrash Sephardi, Inc. v. Town of Surfside*, 366 F.3d 1214, 1230–31 (11th Cir. 2004)). The Third Circuit has held that "a regulation will violate the Equal Terms provision only if it treats religious assemblies or institutions less well than secular assemblies or institutions that are similarly situated *as to the*

*regulatory purpose.*" *Lighthouse Inst. for Evangelism, Inc. v. City of Long Branch*, 510 F.3d 253, 266 (2007) (emphasis in original).

After evaluating the drawbacks of both tests, the Seventh Circuit settled on a modified version of the Third Circuit's test, concluding that the focus should be on secular assemblies or institutions similarly situated as to the "accepted zoning *criteria*" rather than the "regulatory *purpose*[.]" *River of Life Kingdom Ministries v. Village of Hazel Crest, Illinois*, 611 F.3d 367, 371 (7th Cir. 2010) (emphasis in original) (en banc). The Seventh Circuit's version of the test has been adopted by the Ninth Circuit. *See Centro Familiar Cristiano Buenas Nuevas v. City of Yuma*, 651 F.3d 1163, 1173 (9th Cir. 2011) ("[t]he city violates the equal terms provision only when a church is treated on a less than equal basis with a secular comparator, similarly situated with respect to an accepted zoning criteria."). The Fifth Circuit also "requir[es] a similarly situated comparator," placing it in the "camp with the Third, Seventh, and Ninth Circuits[,]" but under a "test that differs slightly" from those utilized by these other courts. *See Opulent Life Church v. City of Holly Springs, Miss.*, 697 F.3d 279, 292 (5th Cir. 2012).

And, although the Sixth Circuit has not directed that this Court must assess a similarly situated secular comparator, at least one court in this district has indicated that "[w]hichever test this court decides to follow . . . Plaintiff is required to identify a similarly situated secular comparator that received more favorable treatment." *Pittsfield Charter Tp.*, 947 F. Supp. 2d at 766. But as explained above, ABBC has not deigned to identify such a "similarly situated" comparator. Although ABBC does claim that "secular institutions like theatres and commercial recreation" are permitted in the highway commercial district, it does not indicate what those institutions are, or how they are alike ABBC. ABBC's bare-boned assertion is inadequate to meet the pleading requirements. *See Racine Charter One, Inc. v. Racine Unified School Dist.*,

424 F.3d 677, 680 (7th Cir. 2005) ("it is clear that similarly situated individuals must be very similar indeed."). Because ABBC has not pled sufficient facts to demonstrate that it was treated differently than a similarly-situated institution, its Equal Terms claim under RLUIPA fails as a matter of law.

ABBC attempts to save the claim by arguing that "[t]here are three claims that may be brought under the Equal Terms Clause," and that it "has primarily based its Equal Terms argument on the first type of claim—that the plain language of the Township's Ordinance *facially differentiates* between religious and secular institutions." Pl.'s Resp. 14 (emphasis in original). But as explained above, the Zoning Ordinance is facially neutral; it does not differentiate between religious and secular institutions. Importantly, the fact that Moffatt's Zoning Ordinance prohibits all churches and other religious buildings, in addition to other secular uses, from commercial zones is not inconsistent with facial neutrality. On the contrary, the Zoning Ordinance prohibits any use in its commercial districts—religious or otherwise—if the institution does not produce revenue and promote commercial growth. Thus, ABBC's Equal Terms argument is without merit even if recast as attacking an ordinance that facially differentiates between religious and secular institutions; Moffatt's Zoning Ordinance simply does not do so. *See Opulent Life Church*, 697 F.3d at 293 (indicating that to lack neutrality, an ordinance must draw an "express distinction" between religious and non-religious institutions).

Again, because ABBC's deficiency relates only to the failure to plead a similarly-situated party, this claim will be dismissed without prejudice.

**b**

As to ABBC's other two claims under RLUIPA, both are without merit as well. Although this Court has concluded that RLUIPA's Nondiscrimination Clause "may not

necessarily require proof of a similarly situated entity treated differently than the plaintiff," a claim under that provision must still "create an inference that the decision to deny its rezoning application was based on its religious faith." *Pittsfield Charter Tp.*, 947 F. Supp. 2d at 765. Nothing in ABBC's complaint, or its response to Moffatt's motion to dismiss, raises an inference that ABBC's rezoning request was denied because of its religious beliefs. Instead, the facts demonstrate that the rezoning request was denied because churches of all types, along with many other secular institutions, do not align with Moffatt's goals regarding its commercial districts.

RLUIPA also forbids a government from "impos[ing] or implement[ing] a land use regulation that—(A) totally excludes religious assemblies from a jurisdiction; or (B) unreasonably limits religious assemblies, institutions, or structures within a jurisdiction." 42 U.S.C. § 2000cc(b)(3). Assessing a claim under this Exclusions and Limits Clause, the Tenth Circuit required a plaintiff to demonstrate the ordinance in question "as applied or implemented, has the effect of depriving both [plaintiff] and other religious institutions or assemblies of reasonable opportunities to practice their religion, including the use and construction of structures, within Boulder county." *Rocky Mountain Christian Church v. Bd. of Cnty. Com'rs*, 613 F.3d 1229, 1238 (10th Cir. 2010). ABBC has not demonstrated that the Zoning Ordinance unreasonably limits its ability to practice its faith in Moffatt Township. Churches and other religious buildings are welcome in four of the Township's six zoning districts (which make up the majority of the Township, *see* Pl.'s Compl. Ex. 6), just not the Township's two commercial districts. In fact, Township officials recommended that ABBC purchase the local Catholic church in order to facilitate the growth of its congregation. Nothing in the record raises the implication that ABBC's rezoning application was denied because of its religious viewpoints. Because ABBC has not pled sufficient facts to raise the inference that the Zoning Ordinance

unreasonably limits its opportunities to practice its religion, its RLUIPA Exclusions and Limits Clause claim is without merit.

Unlike its Equal Terms Clause claim under RLUIPA, ABBC's other two RLUIPA claims will be dismissed with prejudice.

**5**

Finally, Moffatt moves to dismiss ABBC's claims under the Michigan Constitution. ABBC argues that because it "has plead sufficient facts to demonstrate plausible claims under the U.S. Constitution and has thus met the standard to survive a Rule 12(b)(6) challenge, [its] state constitutional claims are plausible on their face as well." Pl.'s Resp. 17–18. But addressed at length, ABBC has not pled sufficient facts to raise the inference that its rights under the United States Constitution have been violated. Without presenting more, its claims necessarily fail under the Michigan Constitution as well. Those claims will be dismissed. Should ABBC choose to amend its Equal Protection claim to demonstrate that it was treated differently than a similarly-situated party, it may bring any related Michigan state law claims. ABBC's other state law claims will be dismissed with prejudice.

**B**

There is no need to tarry long with ABBC's motion for injunctive relief. The failure to demonstrate a "likelihood of success" on a plaintiff's claims is typically fatal to a motion for injunctive relief. *Eden Foods*, 733 F.3d at 631 (citation omitted). After review, ABBC has not demonstrated a likelihood of success on any of its claims. Its motion for injunctive relief will be denied.

## IV

Accordingly, it is **ORDERED** that Moffatt's motion to dismiss, ECF No. 10, is **GRANTED IN PART**. ABBC's Equal Protection claim and its RLUIPA Equal Terms Clause claim are **DISMISSED** without prejudice, together with any related Michigan state law claims. All other claims contained in ABBC's complaint are **DISMISSED** with prejudice.

It is further **ORDERED** that ABBC's motion for injunctive relief, ECF No. 2, is **DENIED**.

It is further **ORDERED** that ABBC's motion to strike affirmative defenses, ECF No. 17, is **DENIED** as moot.

It is further **ORDERED** that ABBC's complaint, ECF No. 1, is **DISMISSED**. This is a final order and closes the case.

Dated: February 5, 2014                                     s/Thomas L. Ludington
                                                            THOMAS L. LUDINGTON
                                                            United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on February 5, 2014.
                        s/Tracy A. Jacobs
                        TRACY A. JACOBS

---